**Paul M. BURKE, Plaintiff,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., Defendants.**

**No. CIV.A. 99–2581(HHK).**

United States District Court, District of Columbia.

Jan. 11, 2001.

Frank James Eisenhart, Arter & Hadden LLP, Washington, DC, for plaintiff.

Mark E. Nagle, Wilma Antoinette Lewis, Lisa Barsoomian, Paul Mussenden, U.S. Attorney's Office, Washington, DC, for defendants.

## MEMORANDUM OPINION

KENNEDY, District Judge.

This suit seeks injunctive and declaratory relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* Plaintiff Paul M. Burke ("Burke") challenges the decision of the United States Environmental Protection Agency ("EPA" or "the agency") to debar him from contracting with the federal government and from participating in federal assistance, loans, and benefit programs for a period of five (5) years. Defendant Robert F. Meuiner ("Meuiner"), EPA Suspending and Debarring Official, is sued in his official capacity only. Burke claims that EPA's debarment decision was arbitrary and capricious, an abuse of discretion, and not in accordance with law, all of which EPA denies. Before the court are the parties' cross-motions for summary judgment. Upon consideration of the parties' summary-judgment papers and the record of the case, the court concludes that Burke's motion for summary judgment should be denied and EPA's motion for summary judgment should be granted.

## I. BACKGROUND

From 1989 to 1998, Burke was the president and sole shareholder of ACMAR Regional Landfill, Inc. ("ACMAR"), and the majority shareholder of Acmar Landfill, a Partnership ("the Partnership"). ACMAR and the Partnership owned and operated the ACMAR Regional Landfill ("the Landfill") located in Moody, Alabama. The Landfill accepted residential and industrial waste and bordered on the Big Black Creek, which flows into the Cahaba River, a source of drinking water for the residents of Birmingham, Alabama. In March 1990, the Alabama Department of Environmental Management ("ADEM") issued a permit to ACMAR for the disposal of solid waste within a fifty-acre, cigar-shaped parcel of land, referred to as the "cigar parcel." ADEM also issued to ACMAR a National Pollution Discharge Elimination System ("NPDES") permit, which authorized the release of storm water run-

off that does not contain leachate [1] into the Big Black Creek.

On February 24, 1998, an information was filed in the United States District Court for the Northern District of Alabama, Middle Division, charging Burke with violating the Clean Water Act ("CWA"), 33 U.S.C. § 1319(c)(1)(A), for the negligent discharge of leachate into the Big Black Creek. The discharge occurred almost five years earlier on March 30, 1993. Burke pled guilty to violating the CWA, was fined $10,000, and was sentenced to eight months in prison, four months at a halfway house, and one year supervised release if he continued to own or work for ACMAR or the Partnership at the time of his release from custody. In addition, ACMAR pled guilty to conspiring to defraud the United States through the illegal expansion of the Landfill, the disposal of solid waste in an unpermitted area, and the defrauding of landfill clients. ACMAR was fined $1.8 million and was ordered to develop an effective environmental compliance plan. Pursuant to his plea agreement, Burke sold ACMAR to Superior Star Ridge in March 1998.

On July 16, 1998, the EPA Suspension and Debarment Division ("SDD") requested, through an Action Referral Memorandum ("ARM"), that Burke be suspended immediately, pending a proposed five-year debarment based on his conviction for violating the Clean Water Act.[2] Robert F. Meunier, EPA Debarring Official, issued the notice of suspension on August 4, 1998, pursuant to 40 C.F.R. Part 32, applicable to federal assistance and loan programs, and 48 C.F.R. Subpart 9.4, applicable to federal procurement. Burke timely contested the notice and requested an oral hearing, which was held on April 27, and 28, 1999.

On August 30, 1999, Meunier officially debarred Burke from participating in federal assistance, loans, and benefit programs and from contracting with the federal government for a five-year period, measured from the date of his suspension. *See In the Matter of Paul Burke*, EPA Case No. 98–0075–01, Aug. 30, 1999, at 15 ("Decision"). In the Decision, EPA concluded that Burke's criminal conviction provided cause for debarment and that Burke did not demonstrate sufficient mitigating factors or remedial measures showing that debarment was unnecessary. EPA also found that a five-year, as opposed to a three-year, period of debarment was warranted under the circumstances. This action followed.

Count I of the complaint alleges that EPA's Decision was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. Count II asserts that EPA improperly issued the notice of debarment more than five years after the events underlying the notice and, as a consequence, EPA's debarment was time barred.[3]

---

1. Leachate is a liquid by-product produced in landfills when either precipitation or other fluid mixes with contaminants found in the waste, thereby, creating a biological reaction. Depending on the amount of decomposition or available oxygen, the leachate leads to the production of additional contaminants in downward moving water. Leachate also stains the ground as it seeps back into the soil.

2. The agency followed policies and procedures governing the debarment of government contractors as outlined in the Federal Acquisition Regulation ("FAR"), codified in 48 C.F.R. Chapter 1. *See* 48 C.F.R. § 9.400(a)(1).

3. Pursuant to LCvR 7.1(h), the court will deem as admitted EPA's statement that "Plaintiff did not raise the statute of limitations provisions under 28 U.S.C. § 2462 at any time during the administrative proceedings." Defs.' Statement of Material Facts at ¶ 13. Burke does not controvert this assertion in his statement of genuine issues, and he candidly admits that he "devotes no space in [his opposition] memorandum to the arguments on the statute of limitations" claim. Pl.'s Opp. to Def.'s Mot. for Summ. J. at n. 1. Given that Burke did not raise his statute of limitation arguments during the administrative proceedings, this court will not address this claim. *See United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952) ("[C]ourts should not top-

## II. ANALYSIS

### A. Standard of Review

Judicial review of EPA's Decision is available pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* The APA provides that the reviewing court shall hold unlawful an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In evaluating a debarment under this standard, the court must consider the entire administrative record and determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The arbitrary and capricious standard is highly deferential and presumes the agency action to be valid. *See Kisser v. Cisneros*, 14 F.3d 615, 618 (D.C.Cir.1994). It is also well established that when reviewing matters under this standard, the court may not substitute its judgment for that of the agency officials. Rather, the court's inquiry is limited to determining whether the agency examined the case facts and articulated a satisfactory explanation for its decision, including a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)).

Further clarifying the arbitrary and capricious standard, the Supreme Court in *Motor Vehicle Mfrs. Ass'n* noted that an agency decision:

would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Id.* at 43, 103 S.Ct. 2856.

Moreover, this Circuit has equated the arbitrary and capricious standard with the "substantial evidence" test: "[W]hen the arbitrary and capricious standard is performing [the] function of assuring factual support, there is no substantive difference between what it requires and what would be required by the substantial evidence test, since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense. . . ." *Association of Data Processing Serv. Orgs., Inc. v. Board of Governors of the Fed. Reserve Sys.*, 745 F.2d 677, 683–84 (D.C.Cir.1984). *See also Shane Meat Co., Inc. v. United States Dep't of Defense*, 800 F.2d 334, 339 (3d Cir.1986) (reversing the district court's determination that the agency's debarment decision was arbitrary and capricious).

### B. Discussion

■ Debarment is a discretionary measure taken to protect the public interest and to promote an agency's policy of conducting business only with responsible persons. *See* 40 C.F.R. § 32.115(a); *Caiola v. Carroll*, 851 F.2d 395, 399 (D.C.Cir.1988). Debarment cannot be used to punish an individual; rather, it serves a remedial purpose of protecting the federal government from the business risk of dealing with an individual who lacks "business in-

---

ple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."); *Brotherhood of Railroad Trainmen v. Chicago, Milwaukee, St. Paul & Pacific Railroad*, 380 F.2d 605, 608 (D.C.Cir.1967) ("Procedural objec-

tions to the action of an administrative agency or trial court must be timely made to give the tribunal an opportunity to correct the error, if error there be; such contentions cannot first be made on appeal."), *cert. denied*, 389 U.S. 928, 88 S.Ct. 289, 19 L.Ed.2d 279 (1967).

tegrity or business honesty." 40 C.F.R. § 32.305(a)(4). The initiation of a debarment proceeding requires the existence of past misconduct; however, the final decision to debar an individual must focus on that individual's present business responsibility. In addition, the debarring official must determine whether any mitigating factors show that the business risk to the government has been eliminated to the extent that debarment would be unnecessary. *See* 40 C.F.R. § 32.300.

## 1) Cause for Debarment

EPA found that Burke's criminal conviction for a negligent violation of the Clean Water Act established cause for debarment under 40 C.F.R. § 32.305(a)(4)[4] because the offense indicates a lack of business integrity that directly affects Burke's present responsibility. The agency also found an alternative cause for debarment under 40 C.F.R. § 32.305(d)[5] because the "factual misconduct" providing the basis for Burke's conviction "shows a serious lack of business responsibility." Decision at 7.

Burke offers several arguments in support of his claim that EPA's determination was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). First, Burke argues that the Decision erred as a matter of law by concluding that his criminal conviction established an offense-based cause for debarment. Burke contends that his conviction for the negligent discharge of leachate is neither one of the specified offenses listed in 40 C.F.R.

§ 32.305(a)(1–3) nor within the "nature and character" of offenses generally described in 40 C.F.R. § 32.305(a)(4). Pl.'s Mot. for Summ. J. at 8. EPA responds by pointing out that it interprets 40 C.F.R. § 32.305(a)(4) to include environmental crimes where there is a reasonable connection between the participant's misconduct and his business integrity. *See* 53 Fed. Reg. 19195, May 26, 1998 (noting that the unauthorized disposal of hazardous wastes could result in debarment under 40 C.F.R. § 32.305(a)(4) or (d)). Burke does not challenge EPA's interpretation of Section 32.305; rather, he contends that his case does not fall within the parameters of that interpretation.

As an initial matter, it is important to recognize that an agency's interpretation of its own regulations is entitled to considerable deference. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980) ("[a]n agency's construction of its own regulations has been regarded as especially due [considerable] respect."). With this principle in mind, there is no basis for concluding that EPA's interpretation of the parameters of Section 32.305 is wrong. EPA evaluated the relevant case facts and discerned a reasonable connection between Burke's misconduct and his business integrity:

> Operation of landfills in an environmentally compliant manner protects the environment and human health and safety.

---

**4.** 40 C.F.R. § 32.305(a) states: "Debarment may be imposed in accordance with the provisions of §§ 32.300 through 32.314 for (a) Conviction of or civil judgment for: (1) Commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; (2) Violation of Federal or State antitrust statutes, including those proscribing price fixing between competitors, allocation of customers between competitors, and bid rigging; (3) Commission of embezzlement, theft, forgery, bribery, falsification or

destruction of records, making false statements, receiving stolen property, making false claims, or obstruction of justice; or (4) *Commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects the present responsibility of a person.*" (emphasis added).

**5.** 40 C.F.R. § 32.305(d) provides for debarment for "[a]ny other cause of so serious or compelling a nature that it affects the present responsibility of a person." *Id.*

The negligent discharge of leachate, in the course of Mr. Burke's commercial operation of Acmar, raises serious questions about his business integrity.

Decision at 6.

Moreover, the administrative record contains substantial evidence to support EPA's finding that a nexus exists between Burke's criminal conviction and his business integrity. As a result of his guilty plea, Burke was fined $10,000 and sentenced to eight months in prison, four months in a halfway house, and twelve months supervised release if he continued his relationship with ACMAR. The details of the plea agreement, along with the fact that Burke was essentially compelled to discontinue his relationship with ACMAR, adequately support EPA's conclusion that Burke's criminal conviction reflected, to a significant degree, on his business integrity.

In addition, EPA properly evaluated Burke's criminal offense in light of AC-MAR's fraud and deceit. Here the totality of the circumstances—especially the fact that Burke was the president and sole owner of ACMAR, which pled guilty to criminal conspiracy and was fined $1.8 million—gives rise to adverse inferences regarding Burke's business practices. *See, e.g., Robinson v. Cheney*, 876 F.2d 152, 154 (D.C.Cir.1989) (noting that in a debarment action an agency may impute improper conduct from one affiliate to another if one controls or can control the other) (citing 48 C.F.R. § 9.403). The administrative record also confirms that Burke's guilty plea and fine were considered as part of the overall plea agreement with ACMAR. Even though Burke's individual conviction *alone* provides sufficient cause for debarment,[6] it was hardly arbitrary and capri-

cious for EPA to consider Burke's criminal offense in light of his company's related criminal fraud.

### 2) Mitigating Factors

■ Before imposing a debarment, EPA must ascertain whether any mitigating factors or remedial measures show that the business risk of dealing with the individual has been eliminated to the extent that debarment is unnecessary. *See* 40 C.F.R. § 32.300; 48 C.F.R. § 9.406–1(a). Federal Acquisition Regulations ("FARs") set forth relevant mitigating factors the agency should consider. *See* 48 C.F.R. § 9.406–1(a)(1–10). The respondent has the burden of demonstrating—to the satisfaction of the debarring official—that sufficient mitigating factors make debarment unnecessary, however. *Id.* Burke argues that EPA failed to consider substantial mitigating evidence in concluding that he should be debarred and failed to evaluate properly the seriousness of his conduct.

Burke first points to testimony in the administrative record indicating that the leachate violations were eliminated before the government informed Burke or AC-MAR of the problem. Burke also contends that the off-site disposal was the result of a mere "misunderstanding" with the state regulatory agency. According to Burke, the circumstances of the off-site disposal prove that his conduct was "hardly serious enough to warrant debarment." Pl.'s Mot. for Summ. J. at 20–21. Burke next asserts that he did not have a high degree of relative culpability, as EPA claimed, because he tried to make sure that the leachate problem was addressed and because other staff members were more responsible for the day-to-day activities at the Landfill.[7] Finally, Burke claims

---

**6.** The agency also proffered a "conduct-based" cause for debarment, noting that the "factual misconduct" providing the basis for Burke's conviction "shows a serious lack of business responsibility" under 40 C.F.R. § 32.305(d). Decision at 7. The court, however, need not evaluate the agency's "conduct-based" rationale because we hold that EPA

offered a proper "offense-based" cause for the debarment—i.e., Burke's individual conviction.

**7.** Burke also argues that EPA grossly discounted the voluntary remedial efforts he undertook with respect to the off-site disposal.

that his overall character, the time period since his violation, and his compliance with court-ordered sanctions all demonstrate that debarment is unnecessary.

It is apparent that Burke seeks to expand the court's limited standard of review. However, we can neither perform a de novo review of the record, *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), nor substitute our judgment for that of agency officials. *See Shane Meat Co., Inc. v. United States Dep't of Defense*, 800 F.2d 334, 339 (3d Cir.1986) (reversing the district court's decision because it improperly substituted its judgment for that of the agency). Based on our evaluation of the administrative record and EPA's Decision, the court cannot conclude that the agency was arbitrary and capricious in considering the relevant mitigating factors. The Decision clearly indicates that EPA evaluated each mitigating factor Burke raised. *See* Decision at 8 (considering "relative culpability"); 9 (considering the "seriousness of the misconduct"); 10 (considering "time that has elapsed"); 10–11 (considering "appropriate remedial measures"); 11 (considering "court-imposed sanctions"); 12 (considering "character before and after the offense"); and 12 (considering "compliance with the consent order"). Moreover, there is substantial evidence in the record to support EPA's assessment of each factor and the relative *weight* assigned to each factor. While there are some aspects of the record that support Burke's position, EPA's determination that such evidence is outweighed by other evidence in the record is reasonable and must be upheld under the applicable standard of review. *See Western Air Lines, Inc. v. Civil Aeronautics Board*, 495 F.2d 145, 152 (D.C.Cir. 1974) (noting that an agency's conclusion

can satisfy the substantial evidence test "even though a plausible alternative interpretation of the evidence would support a contrary view").[8]

## 3) Period of Debarment

Burke argues that the administrative record does not support EPA's conclusion that a five-year, as opposed to three-year, debarment is warranted. Federal regulations provide that debarment shall be for a period of time commensurate with the seriousness of the cause and in consideration of any mitigating factors. *See* 40 C.F.R. § 32.320. Debarment is generally imposed for a three-year period, though a longer time frame is permitted "[w]here circumstances warrant." *Id.* Here EPA determined that the seriousness of Burke's misconduct, "based on the fact that Mr. Burke was the sole shareholder and president of Acmar; that he knew that Acmar was not acting in accordance with their permit; and that he misrepresented to customers that solid waste would be disposed of in accordance with state and federal regulations," warrants a fiveyear debarment period. Decision at 13. EPA also imposed the five-year debarment because "[o]nly when Mr. Burke was forced into a position of compliance by ADEM did he begin to implement actions that should have been a part of the daily operation of Acmar .... [and because] Mr. Burke has not presented persuasive evidence of altered personal business conduct which demonstrates that he now does not pose a risk to the government." *Id.*

Burke challenges the length of his debarment on several grounds. First, he argues that EPA misstated the facts when it claimed that he implemented remedial actions only after the ADEM forced him into compliance. Second, Burke contends that his criminal conviction resulted from a

8. Neither will the court reverse or remand this case simply because EPA's Decision does not explicitly describe each detail in the record that it evaluated. Unlike in *Roemer v. Hoffmann*, 419 F.Supp. 130, 132 (D.D.C. 1976), where the court remanded the debarment decision back to the Department of the Army because the court found that the Army attributed "little or no importance" to mitigating factors, it is clear in the present case that EPA properly weighed the mitigating factors Burke raised.

one-day violation, rather than multiple violations extending over several years, as EPA implies. Third, Burke again claims that the agency failed to consider evidence that he undertook voluntary compliance efforts "more and more seriously, and more and more proactively, over time." Pl.'s Mot. for Summ. J. at 38.

EPA responds that it properly weighed the circumstances surrounding Burke's conviction and any relevant mitigating factors. Though EPA acknowledges that its Decision misstated certain aspects of Burke's offense, *see* Decision at 4 (noting that Burke was charged with "two counts" of solid waste disposal instead of one), this mistake was not a "grossly erroneous mischaracterization" that warrants reversal, as Burke contends. Pl.'s Mot. for Summ. J. at 13–14. In fact, in the Decision's very next paragraph, EPA correctly notes that "Mr. Burke pled guilty to a *one* count violation of the CWA." Decision at 4 (emphasis added).

EPA has discretion to impose debarment periods consistent with the case circumstances and mitigating factors. This court's only responsibility then is to ensure that such discretion was exercised nonarbitrarily and that EPA's Decision was supported by the administrative record. Even if the Decision was "of less than ideal clarity," the court must nonetheless uphold it "if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). This is the case here.

■ EPA provided several valid reasons in support of its determination that a five-year, as opposed to three-year, debarment was appropriate. The seriousness of Burke's criminal conviction, his failure to take personal responsibility for his offense, and his direct control of and involvement with ACMAR and the Landfill[9] each provided an independent basis for EPA's conclusion. In addition, EPA adequately demonstrated that it considered—though found unpersuasive—Burke's arguments concerning his past "misunderstandings" with environmental regulators. EPA also properly entertained Burke's alternative argument that other EPA debarment decisions suggest that a longer debarment period is unwarranted.[10] Because there is no clear error of judgment or failure to consider relevant factors, this court concludes that EPA's imposition of a five-year, as opposed to a three-year, debarment was not arbitrary and capricious.

## III. CONCLUSION

After reviewing the EPA Decision and administrative record, the court cannot

---

9. Burke strongly argues that his business conduct should not be evaluated in the context of ACMAR, a company Burke controlled and directed. But as the agency rightly points out, Burke tries to have it both ways: he takes credit for the positive attributes at ACMAR (its "state-of-theart facilities"), while distancing himself from its negative history (its guilty plea to criminal conspiracy and $1.8 million fine). Burke also takes an extremely narrow view of his conviction and fails to recognize that his punishment was considered as part of the overall plea agreement with ACMAR. Moreover, the record includes substantial evidence that Burke was intimately involved with ACMAR and that he directly benefitted from the company's criminal conspiracy.

10. In his pleadings as well as before the agency, Burke compared this case to *In the Matter of: Steven D. Burnett and Dean A. Schrader,* EPA Case Nos. 96–0036–00 and 01, June 11, 1997. There the respondents, who had filled in wetlands without a permit, received a three-year debarment. Burke argues that if those respondents, who did not have a permit, received a three year debarment; then he, who did have a permit, should receive a lesser sentence. EPA explicitly rejected this argument:

> Debarment is a case-by-case determination. *Possession of a permit is not the issue.* Messrs. Burnett and Schrader violated the law by failing to obtain a permit. Mr. Burke violated the law by failing to operate a landfill within the requirements of his permits. The permits issued to Mr. Burke created an obligation to operate Acmar in a manner which did not harm the environment or threaten human health and safety. Decision at 13 (emphasis added).

conclude that the agency's five-year debarment of Burke was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. There was substantial evidence to support Burke's debarment, and EPA articulated a rational connection between the facts found and the decision made. Also, there was no clear error of judgment. The court, therefore, denies Burke's motion for summary judgment and enters judgment on all counts in favor of EPA. An appropriate order accompanies this memorandum.

### ORDER AND JUDGMENT

Pursuant to Fed.R.Civ.P. 58 and for the reasons stated by the court in its memorandum docketed this same day, it is this 11th day of January, 2001, hereby

**ORDERED and ADJUDGED** that the complaint in this case is **DISMISSED**.